UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Thomas Evans, | ) | C/A No.: 5:12-cv-03053-RMG-KDW |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden McCall, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Thomas Evans ("Petitioner" or "Evans") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 28, 29. On February 22, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 30. Petitioner filed a response in opposition to Respondent's Motion for Summary Judgment on April 25, 2013. ECF No. 36. Respondent filed a Reply to Petitioner's Response on May 6, 2013. ECF No. 37. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 28, be granted.

I.     Background

Petitioner is currently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In June 2007, Petitioner was indicted by a

Charleston County Grand Jury for armed robbery (2007-GS-10-7508). App. 55-56.[1] On April 23, 2008, a jury trial was conducted before the Honorable John C. Few in Charleston, South Carolina. App. 1. Attorneys Donna Taylor and Lynn Bowley represented Petitioner, and Solicitor Nathan Williams represented the State. *Id.* On April 24, 2008, Petitioner stopped his jury trial and pled guilty to the indictment. App. 3-52. Judge Few sentenced Petitioner to thirty years confinement. App. 53. Petitioner did not file a direct appeal.

II.     Procedural History

On April 1, 2009, Petitioner filed an Application for Post-Conviction Relief ("PCR") alleging ineffective assistance of counsel and violations of his Fourth, Fifth, Eighth, and Fourteenth constitutional amendments. App. 58-64. On August 13, 2009, the State filed a return and motion to dismiss without prejudice arguing that Petitioner's PCR application should be dismissed because Petitioner's direct appeal was still pending and therefore PCR was unavailable to Petitioner. App. 65-67. On August 27, 2009, Petitioner's PCR Application was dismissed without prejudice based on Petitioner's pending direct appeal. App. 68-69. On December 17, 2010, Petitioner filed a second PCR Application alleging ineffective assistance of counsel and violations of his Fourth, Fifth, Eighth, and Fourteenth constitutional amendments. App. 70-76. The State filed a return and a partial motion to dismiss on June 29, 2011, arguing that Petitioner's PCR Application should be dismissed as untimely as it was filed 20 months after the statute of limitations had expired. App. 86. The state requested an evidentiary hearing solely on Petitioner's belated appeal issue. *Id.* at 87. Petitioner filed an opposition to the motion to dismiss on September 2, 2011, and a memorandum in support of his PCR application on September 14, 2011. App. 79-83, 89-94. On September 14, 2011, an evidentiary hearing was

---

[1] Citations to "App." refer to the Appendix for Petitioner's appeal of his judgment of conviction. That appendix is available at ECF No. 29-1 in this habeas matter.

conducted before the Honorable Deadra L. Jefferson. *Id.* at 95. At the start of the hearing, the State withdrew its motion to dismiss noting that when the motion was filed the State "originally thought the appeal was from this case, but there was never a trial. So there was a timely application." *Id.* at 98-99. Petitioner was present and represented by Jennifer M. Stark, Esq.; Assistant Attorney General Matthew Friedman represented the State. *Id*. Petitioner and his trial attorney, Donna K. Taylor, testified at the hearing. *Id.* at 100-158.

In an Order dated October 6, 2011, and filed October 10, 2011, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court had the opportunity to review the record in its entirety and hear the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact, and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

The Applicant testified he did not want to plead guilty on his first armed robbery charge.[2] He testified his family pressured him to take the plea so he would not receive life without parole (LWOP). He asserted it was his understanding he could only get thirty (30) years if he was found guilty at trial. He testified he told counsel that U.S. Marshals arrested him without a warrant. Applicant testified he thought he had an agreement with the detective and he felt coerced to give a statement. Applicant testified his warrants were not signed or delivered to him, and counsel never went through the warrants with him prior to the plea. He also testified he asked counsel to argue as defenses warrantless arrest, faulty indictment, and co-defendant's multiple written statements; however, counsel failed to argue these defenses.

---

[2] At the time of this plea, Applicant had a total of approximately sixteen (16) armed robbery charges pending in Charleston, Berkeley, and Dorchester counties. (Tr. 12:24-13:3.)

3

He contended his understanding of the plea agreement was the State would not pursue LWOP, and he did not think he would face any more time if he plead to the subsequent charges. Applicant testified he did not know the State could use his subsequent pending armed robbery charges as strikes. He testified it was his understanding if he was convicted of a future armed robbery after he was released from prison, he could then receive an additional strike; he did not know his current armed robbery charges could be counted toward the two strike law. Applicant also argued he did not understand the principle of consecutive versus concurrent sentences. He testified his goal in entering the guilty plea was to avoid LWOP, but he did not know he could get LWOP if he did not plea to his subsequent armed robbery charges.

He testified counsel brought up the subject of appeal, and he instructed her to file the appeal. Applicant asserted he never told counsel he did not want to appeal.

Plea counsel testified she represented Applicant on a series of armed robberies in three (3) counties. She testified she met with Applicant ten (10) to thirty (30) times over a two (2) year span and fully explained the elements of the charge, range of penalty, and the consequences of a guilty plea. She asserted the solicitor Nathan Williams indicated anyone who did not cooperate would face LWOP. Counsel recalled Applicant did not want to testify against the codefendants. She testified they discussed potential defenses, including the theory he did not do it and his statement was false and the theory he was under duress from a co-defendant. She testified the co-defendant's attorney would not let her talk to his client, and she discussed with Applicant the difficulty in proving duress. She further testified Applicant's recorded statement was a major issue in the case.

Counsel testified they came close to a plea agreement several times, but Applicant always wanted a better deal. She testified the best he could hope for was fifteen (15) years with cooperation. There was an offer of ten (10) years at one point, but Applicant backed out. She stated at that point the best he could hope for was to avoid LWOP and accept an offer of thirty (30) years on all charges. She asserted Applicant requested probation, but she advised him that was not going to happen. The trial on the armed robbery started before Applicant decided to plead guilty. Counsel testified that during the trial, Defendant leaned over and asked her if he could have a moment with the judge. Counsel testified Applicant admitted to the judge that he perjured himself during the Jackson v. Denno hearing. She asserted it was Applicant's decision to subsequently plead guilty. Counsel testified she told Applicant that she did not think he could go to trial without getting LWOP. She testified the judge allowed Applicant to think about it overnight. She testified she explained the negotiated sentence, and while Applicant was not completely happy about pleading guilty and had some attitude issues during the plea hearing, he understood the consequences of the plea. She testified Applicant got emotional and cried at one point during the plea, but she believes he understood what was going on. She testified the terms of the plea agreement were that if Applicant

4

would plead guilty to one count of armed robbery for thirty (30) years and pleads guilty in the subsequent cases, he would not get LWOP. Counsel asserted she explained to Applicant before the first plea hearing, and, afterwards during discussions about the second plea, that he would have to plead guilty now and on a subsequent plea, and that if he did not plead guilty on the subsequent cases there was no deal. She testified the written plea agreement was made a court's exhibit at the plea hearing.[3] She testified there was no guarantee about concurrent versus consecutive sentences, but she believes he would have received thirty (30) years concurrent on everything if he had plead guilty to the subsequent charges. She further testified she explained the differences between concurrent, consecutive, and life sentences, and she believes Applicant understood.

Counsel testified she does not recall Applicant asking her to file an appeal. She testified she discussed the next steps and what issues Applicant could appeal. She asserted she does not think Applicant would have asked for an appeal but she would have filed an appeal if asked to do so. Counsel testified she had no reason to believe that Applicant wanted to appeal the first plea. She testified the goal after the first plea was to enter a plea on the second set of charges and avoid LWOP. Counsel testified a conflict arose after this plea and she was relieved as counsel. She testified she did not participate in the second trial.

## Ineffective Assistance of Counsel

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); Butler, 286 S.C. at 442, 334 S.E.2d at 814.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 115, 118, 386 S.E.2d 624, 625 (1989).

---

[3] For purposes of this PCR hearing, the written plea agreement, entered into between the State and Applicant on April 24, 2008, was marked as Court's Exhibit No. 1.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under prevailing professional norms." Id. at 117, 386 S.E.2d at 625 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 117-18, 386 S.E.2d at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson. v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness, and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985); Roscoe v. State, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001).

To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S.Ct. 1709, 1712 (1969); Dover v. State, 304 S.C. 433, 434, 405 S.E.2d 391, 392 (1991). "When determining issues relating to guilty pleas, the court will consider the entire record, including the transcript of the guilty plea, and the evidence presented at the PCR hearing." Anderson v. State, 342 S.C. 54, 57, 535 S.E.2d 649, 650 (2000) (citing Harres v. Leeke, 282 S.C. 131, 318 S.E.2d 360 (1984)). When a defendant pleads guilty on the advice of counsel, the plea may only be attacked through a claim of ineffective assistance of counsel. Roscoe, 345 S.C. at 20, 546 S.E.2d at 419.

This Court finds Applicant's testimony is not credible while also finding that counsel's testimony is credible. This Court finds counsel is a trial practitioner who has approximately twenty-eight (28) years of experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, discovery, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, Applicant's version of the facts, and possible defenses or lack thereof. (Tr. 3:18-4:7.)

This Court finds the record reflects Applicant's plea was entered freely, voluntarily, knowingly, and intelligently. (Tr. 46:6-11.) The Applicant was informed of his right to a jury trial and the constitutional rights given up by pleading guilty. (Tr. 9:8-23.) The Court also explained that by pleading guilty, Applicant waived his right to ever challenge his statement given to Detective Osborne, and Applicant acknowledged that he understood. (Tr.17:25-18:23.) Applicant acknowledged that he understood the nature of the charges and the possible punishments for armed robbery. (Tr. 8:1-5, 18:24-19:24,21:15-19.) He

told the court he had taken an antibiotic in the last twenty-four (24) hours but it does not interfere with his ability to think clearly or understand what he is doing. (Tr. 6: 17-7:15.) He also stated he has never had nor treated for any type of mental illness. (Tr. 7:16-22.) He told the court no one threatened him or promised him anything to get him to plead guilty. (Tr. 22:2-17, 40:2-23.) He admitted he was, in fact, guilty of this offense. (Tr. 20:12-13, 35:19-22, 51:4-5.) The Court advised Applicant of the terms of the plea agreement, that he could face concurrent or consecutive sentences to be left up to the sentencing judge, and if the co-defendants go to trial, he will be expected to be available to testify truthfully in those cases; Applicant acknowledged he understood. (Tr. 8:6-7, 10:15-17.) Plea counsel informed the court there were a series of plea agreements with minor changes that had been in existence for weeks, and during this time period she met with Applicant to discuss the agreement. (Tr. 15:9-24.) The Court advised Applicant of the two (2) and three (3) strike law, and the Applicant acknowledged he understood.[4] (Tr. 18:24-19:24.) The Court also clearly advised Applicant there was no guarantee on sentencing in subsequent pleas, that he was not in a good situation, and he realistically faced a very strong possibility of receiving consecutive sentences. (Tr. 11:15:19, 13:4-14:13.) Applicant advised the court he understood the terms of the negotiated sentence. (Tr. 41:8-13.) Applicant further advised he was satisfied with his attorney. (Tr. 22:18-23:2, 26:9-18.)

This Court finds it was Applicant's decision to plead guilty with a full understanding of the consequences of the plea. The Court notes the plea court was extraordinarily patient with the Applicant and took care that he was entering the plea voluntarily, often advising Applicant he would resume trial if there was any indication the plea was involuntary. (Tr. 23:5-17, 25:20-24, 28:11-18: 33:19-34:2.) This Court also finds no evidence the al1eged pressure placed on Applicant's family to get him plead guilty in any way impaired his ability to enter the plea freely and voluntarily. The court adequately inquired whether anyone threatened any of Applicant's family members, and he responded in the negative. (Tr. 42:8-11.)

This Court finds Applicant understood the terms of the written plea agreement. Throughout the plea hearing, Applicant expressed his concern over a possible life or consecutive sentences and asked the plea court about which judge he would go in front of in subsequent pleas. (Tr. 10:3-14, 11:5-11, 13:14-14:13, 17:5-15, 23:21-25, 43:14-44:18.)  He was clearly concerned about his pending charges. This Court finds Applicant was aware that he would have to plead guilty to a second set of charges to avoid LWOP as specified in the written plea agreement.

---

[4] The Court notes the record does not support the Defendant's interpretation of the 2 and 3 strike law.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 5, 239 S.E.2d 750, 752 (1977); Strickland, 466 U.S. at 687-88, 104. S. Ct. at 2064-65; Butler, 286 S.C. at 442, 334 S.E.2d at 814. Applicant alleges counsel failed to review the indictment with him. This Court finds the record bears out that counsel discussed the facts of the case with Applicant and advised him of the elements of armed robbery and the range of penalty. This Court further finds counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in her representation. The Court finds there is no viable issue on warrantless search. Applicant gave a statement to an investigator, and because of this, he had no viable defenses.[5] Counsel obtained a favorable plea agreement for Applicant considering the circumstances in this case and the number of additional pending charges. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court also finds that Applicant is not entitled to a belated direct appeal. The United States Supreme Court has rejected a bright-line rule that counsel must always file an appeal in a criminal case, Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029 (2000). The Court held that a professionally reasonable attorney should, in most cases, consult with the defendant regarding an appeal. Id. at 479, 120 S.Ct. at 1035.

The South Carolina Supreme Court has adopted the holding, "absent extraordinary circumstances, there is no constitutional requirement that a defendant be informed of the right to a direct appeal from a guilty plea." Weathers v. State, 319 S.C. 59, 61, 459 S.E.2d 838, 839 (1995). In determining whether an attorney should consult with the criminal defendant concerning an appeal, the totality of the circumstances must be considered. Id. at 480, 120 S. Ct. at 1036. In examining the totality of the circumstances, courts should consider: (l) whether a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal); or (2) whether this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. Where the post-conviction relief judge determines that the applicant did not freely and voluntarily waive his appellate rights, the applicant may petition the South Carolina Supreme Court for review of direct appeal issues pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974). See Rule 243(i), SCACR; Davis v. State, 288 S.C. 290, 342 S.E.2d 60 (1986).

---

[5] Ms. Taylor testified the statement was challenged pursuant to Jackson v. Denno, which proved to be unsuccessful.

8

>Trial counsel is not required to file a notice of appeal without specifically being asked to do so. See Roe, 528 U.S. 470, 120 S. Ct. 1029. In the present Case, this Court finds counsel's testimony credible that she discussed with Applicant the next steps and what he could appeal, but she does not recall Applicant telling her he wanted to appeal. The Court also finds it credible that counsel would have filed an appeal if Applicant asked her to do so. Counsel testified she had no reason to believe Applicant wanted to appeal since he received the benefit of a negotiated sentence and a written plea agreement. This Court denies this allegation.
>
>Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in her representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by plea counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.
>
>### All Other Allegations
>
>As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.
>
>### **CONCLUSION**
>
>Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice.

App. 178-187.   Petitioner did not file a Rule 59(e), SCRCP, Motion to Alter or Amend.

Petitioner, represented by Katherine H. Hudgins, of South Carolina Commission on Indigent

Defense, Division of Appellate Defense, filed a *Johnson*[2] Petition for Writ of Certiorari, dated July 6, 2012. ECF No. 29-2. The sole issue presented, quoted verbatim, was:

> 1. Was the guilty plea rendered involuntary by the fact that petitioner believed that if he pled guilty the State would not seek a sentence of life without parole on the pending charges?

*Id.* Petitioner did not file a pro se brief. In an Order dated October 3, 2012, the South Carolina Supreme Court, pursuant to *Johnson v. State*, denied the petition for certiorari and granted counsel's request to withdraw. ECF No. 29-4. The remittitur issued on October 22, 2012. ECF No. 29-5. This habeas petition followed on October 23, 2012.

### III. Discussion

#### A. Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: The guilty plea was rendered involuntary by the fact that petitioner believed that if he pled guilty the State would not seek a sentence of life without parole on other pending charges.
>
> Supporting facts: Go to plea hearing transcript page 10 Lines 8-11. My understanding from the above testimony that this plea will barr 2nd plea from Life without parole or 2 strike law.

ECF No. 1 at 5.

#### B. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

---

[2] *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C. Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an

application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

IV.  Analysis

A. Timeliness of Petitioner's Habeas Petition

Respondent argues that Petitioner's habeas petition should be dismissed because Petitioner's claims are untimely, and there is no basis for equitable tolling of the statute of limitations. ECF No. 29 at 7-10. The AEDPA one-year period of limitation begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). As Petitioner did not seek appellate review of his guilty plea or sentence, his conviction became final on May 5, 2008, ten days after his sentence was imposed on April 24, 2008. *See* Rule 203(b)(2), SCACR (stating that in a criminal action a notice of appeal must be served on all respondents within ten days after the sentence is imposed). Petitioner's filing of his PCR application on April 1, 2009 tolled the one-year limitations period, *see* 28 U.S.C. § 2244(d)(2); 331 days had elapsed when Petitioner filed his PCR application, leaving 34 days within which Petitioner could timely file a federal habeas petition. The statute of limitations period remained tolled until Petitioner's PCR application was dismissed without prejudice on August 27, 2009. At this time the one-year limitations period recommenced. When Petitioner's habeas petition was filed on October 23, 2012, more than 1153 days had elapsed. Because Petitioner only had 34 days left to timely file a habeas petition, the October 23, 2012 filing is untimely under 28 U.S.C. § 2244(d). The filing of Petitioner's second PCR application on

12

December 17, 2010, 443 days after the AEDPA statute of limitations expired, did not toll the statute of limitations because the limitations period had already expired when the application was filed. *See Jordan v. Clarke,* No. 1:12cv1156, 2013 WL 1453066, at *2 (E.D.Va. Apr. 5, 2013) (finding that the pendency of the state post-conviction proceeding did not toll the AEDPA limitation period because the state action was filed after the AEDPA limitation period had elapsed); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed.").

Although Petitioner's habeas petition is untimely under a strict application of the AEDPA statute of limitations, the undersigned finds that Petitioner's case presents circumstances where equitable tolling of the AEDPA statute of limitations is appropriate. *See Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (finding that the AEDPA statute of limitations should be equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.")(internal citations omitted). The respondent bears the burden of asserting the AEDPA's statute of limitations, *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002); the petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the equitable-tolling doctrine, *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).

In his Response to Respondent's summary judgment motion, Petitioner argues that the AEDPA statute of limitations should be equitably tolled because his first PCR application was erroneously dismissed due to a pending appeal, however, the pending appeal was "for a separate conviction" which was not the subject of his pending PCR application. ECF No. 36 at 2. Petitioner further argues that the State recognized that his PCR application was improperly

13

dismissed and "at the beginning of the [PCR] hearing, the state withdrew the motion to dismiss and also explained Petitioner did not appeal the plea, but appealed a separate conviction."  ECF No. 36 at 3.  Petitioner argues that the attorney general and state court judge "both made an error on the states' behalf, and it's their fault, Petitioner should not be violated for the state's wrongdoing."  *Id.* at 6.  In its Reply, the State concedes that Petitioner's first PCR action was erroneously dismissed, but argues that Petitioner did not pursue his rights diligently because he "could have either contested dismissal, immediately re-filed his PCR action, or filed his habeas action and sought a stay."   ECF No. 37 at 3.  The undersigned disagrees and finds that this case presents extraordinary circumstances, beyond Petitioner's control or external to his own conduct, that prevented him from filing on time.  *Rouse*, 339 F.3d at 246 (4th Cir. 2003).  It is undisputed that Petitioner timely filed his first PCR action and that this action was improperly dismissed by the State.  Furthermore, during the PCR hearing the State conceded that Petitioner's second PCR Application was also timely filed.  App. 98-99.  Accordingly, the undersigned finds that Petitioner is entitled to equitable tolling of the time period between the filing of his first and second PCR applications.  Therefore, the AEDPA statute of limitations began to run following the conclusion of his second PCR action on October 22, 2012.  When Petitioner's habeas petition was filed on October 23, 2012, one day had elapsed on the statute of limitation, therefore the habeas petition was brought well within the 34 days he had left to file a habeas petition. The undersigned finds that this habeas petition is timely.

    B.  Merits

Petitioner argues that his guilty plea was involuntary because he believed that if he pled guilty the State would not seek a sentence of life without parole on other pending charges. ECF No. 1.  Petitioner was sentenced to life without parole in a subsequent jury trial of one of the

pending charges. App. 97. Petitioner requests that his sentence be overturned and vacated. ECF No. 1 at 14. Respondent argues that Petitioner's plea was "not rendered invalid simply because [he] hoped to avoid a life without parole sentence." ECF No. 29 at 14. Respondent argues that the PCR judge properly rejected Petitioner's arguments that his plea was involuntary and contends that the record supports the PCR judge's findings and that the judge's ruling reasonably applied relevant federal law. *Id.*

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 696. In the context of a guilty plea, ineffective assistance of counsel claims may be asserted in limited circumstances. In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

At the PCR hearing, trial counsel testified that Petitioner was facing sixteen armed robbery charges at the time he entered his plea. App. 100. Trial counsel testified that she and

Petitioner had several conversations and reviewed several written plea agreements prior to going to trial, but they were never able to come to an agreement with the solicitor because Petitioner wanted to serve less time than was being offered. App. 105-06. Trial counsel testified she informed Petitioner that the solicitor planned to seek life without parole if they "didn't work something out." App. 106. Trial counsel testified that Petitioner decided to take a plea after trial started. App. 110. Trial counsel testified that she

> explained to [Petitioner] and his family, was that he – if he was going to plead now he would get 30 years. If he would enter a plea subsequently to a second case, he would be given an opportunity to cooperate and testify against any remaining codefendants. And if he did that, then he would have the option of getting concurrent time, perhaps even less than 30 to the subsequent one, but he would get no more than 30 years. But that was not even guaranteed. The only guarantee given to him if he entered a subsequent plea and if he was cooperative was that they would not seek life without parole.

App. 115. Trial counsel stated she explained this to Petitioner before he entered his plea

> because it was clear to me that he had issues regarding the time he was facing. And while I don't believe that [Petitioner] had any legally relevant impairments, he would frequently communicate with me in not the most intelligent manner. So I was very careful to articulate.
>
> Yes, we talked about that in order to get this deal, which at least meant no life without parole, is that he would have to plea to this case, and he would have to plea to the second case. And if he didn't enter the second plea and he wanted a trial, then there was no deal.

App. 116. Trial counsel testified that although the fact that [Petitioner] had to plea to his remaining charges to avoid life without parole may not have been placed on the record during the plea hearing, trial counsel averred that she discussed this term with Petitioner before his plea was entered. App. 123.

Petitioner, who also testified at the PCR hearing, stated that he did not see the written plea agreement before he entered his plea and that his attorney did not discuss the terms of the written plea agreement with him. App. 137. Petitioner testified that he believed he was entering

16

a plea so that he would not receive life without parole and that the State "can't hit [him] with a two-strike law." App. 142. Petitioner stated that it was his understanding that he "would have to get out [of prison] and commit another charge" before the State could sentence him to life without parole. App. 143. Petitioner contends that he did not know that he had to enter a guilty plea in his other cases to avoid life without parole. App. 145. He testified that he "thought it was over after the trial." *Id.* At the conclusion of the testimony, Petitioner's written plea agreement was introduced into the record. App. 159.

The PCR court found that based on the transcripts and trial counsel's testimony, that "it was [Petitioner's] decision to plead guilty with a full understanding of the consequences of the plea." App. 184. Further, the PCR Court found trial counsel's testimony was credible and the Petitioner's testimony was not. ECF No. 38 at 2. That determination is entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). The undersigned finds that the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of *Hill* and *Strickland* and was not based upon an unreasonable determination of facts in light of the state court record. Nor was the PCR court's decision "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 386 (2000). Thus, the undersigned recommends that the Respondent's motion for summary judgment be granted.

17

V.    Conclusion

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 28, be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

May 10, 2013                                              Kaymani D. West
Florence, South Carolina                                  United States Magistrate Judge


**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**